IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Criminal No. 5:21-CR-00314-M-1
Civil No. 5:25-CV-00110-M

| | |
|---|---|
| JONATHAN AQUAVIOUS HEATH, | |
| Petitioner, | |
| v. | ORDER |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

This matter comes before the court on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, DE 239, and the United States' Motion to Dismiss, DE 245. For the reasons explained below, the United States' Motion is GRANTED, and Petitioner's Motion is DISMISSED.

## I. Abbreviated Factual History

Through an investigation into drug trafficking in the Goldsboro, North Carolina area, the Bureau of Alcohol Tobacco and Firearms (ATF) learned that Petitioner helped lead a drug trafficking organization. DE 189 at ¶ 9. That investigation confirmed that Petitioner, in particular, ran multiple "stash houses" to support the organization. *Id.* at ¶ 10. And through the investigation, the ATF learned of drug distribution activities that dated to as early as March of 2010. *Id.* at ¶ 13. Following the investigation, a grand jury impaneled in the Eastern District of North Carolina returned an indictment which charged Petitioner and his four co-conspirators with ten counts related to the distribution of cocaine base and methamphetamine; counts one, four, five, six, seven, and eight explicitly charged Petitioner. DE 1. Pursuant to an agreement, Petitioner pled guilty to

two counts: conspiracy to distribute in violation of 21 U.S.C. §846 and distribution in violation of 21 U.S.C. § 841(a)(1). DE 153.

At his arraignment, the court confirmed that Petitioner was competent and ready to enter his plea, and Petitioner affirmed that the was "fully satisfied with [his] lawyer's legal services." Trans. at 14. Petitioner affirmed his understanding that the court alone would sentence him, and that the stipulations in his plea agreement were merely persuasive. Importantly, Defendant verbally pled "guilty" to Counts One and Eight of the Indictment, informed that court that he "[did] what is charged" in each count, and affirmed that he "[was], in fact, guilty as charged" in each count. Petitioner further confirmed that, beyond the plea agreement and its terms, no one "made any promise to [him] that caused [him] to decide to plead guilty." DE 20. After hearing the United States' proffer, Petitioner informed that court that he did not object to the facts presented to the court by the Assistant United States Attorney. Trans. at 206. The court also explained to Petitioner that by pleading guilty, Petitioner would waive certain rights, specifically including his "right to confront and cross-examine witnesses." Trans. at 5.

Under the plea agreement, Petitioner and the United States stipulated to a converted drug weight of 90,0000 kilograms—resulting in a base offense level of 38—and that Petitioner would receive the maximum downward adjustment for acceptance of responsibility. DE 154 at 9. The memorandum of the agreement contains no stipulations concerning the applicability or inapplicability of any other enhancements. DE 154. Based on his Presentence Investigation Report, Petitioner's conduct merited a two-level enhancement for the possession of a dangerous weapon (USSG § 2D1.1(b)(1), a two-level enhancement for a credible threat to use violence (USSG § 2D1.1(b)(2)), a two-level enhancement for maintaining a premise (USSG § 2D1.1(b)(12)), and a four-level enhancement for Petitioner's role as an organizer or leader (USSG

2

§ 3B1.1(a)). DE 189 at ¶¶ 89–93. Thus, and with his three-point reduction for timely acceptance of responsibility, Petitioner's conduct resulted in an offense level of forty-five, which the court treats as a level forty-three. USSG 5A comment n.2.

As Petitioner's drug distribution activities and relevant conduct dated to as early as March of 2010, the sentencing guidelines allow for consideration of convictions beginning in March of 2000 to calculate Petitioner's criminal history score. USSG § 4A1.1. According to the Presentence Report, Petitioner's criminal history includes thirty-four convictions during that timeframe. For those thirty-four convictions, Petitioner received a subtotal criminal history score of eighteen, which, when combined with a two-level increase for committing the instant offense while under a sentence, meant Petitioner's criminal history score was twenty. Under the Sentencing Guidelines, a criminal history score of thirteen establishes a criminal history category of six—the maximum. USSG § 5A.

Thus, entering his sentencing hearing, Petitioner faced a guidelines range of life based on an offense level forty-three and criminal history category six. USSG § 5A. However, "in the interest of substantial fairness and equal treatment between the parties," the court varied downward to a guidelines range of three hundred sixty months to life in prison. Trans. at 13. Effectively, that variance meant that Petitioner did not receive enhancements for his threat of violence, possession of a weapon, or role as an organizer or leader, thus decreasing Petitioner's offense level to thirty-seven. At sentencing, Petitioner also expressed some frustration with his initial guidelines calculation, contending "[he] had met with [his attorney and the AUSA] before [his] arraignment . . . [and] thought it was gonna be no enhancement points." Trans. at 22. The court explained to Petitioner that the court "varied back to exactly where [Petitioner] would otherwise be with no enhancement points," an explanation which Petitioner accepted. Trans. at 22.

3

Ultimately, the court sentenced Petitioner to 252 months' incarceration, a downward departure that affected a 30% reduction from the bottom of Petitioner's already varied guidelines range. As the court told all parties at sentencing, "this is the sentence sufficient but not greater than necessary in this case." Trans. at 42.

Petitioner has now filed the instant motion, through which he collaterally attacks his sentence on four grounds. First, Petitioner alleges a miscalculation of his criminal history points—which Petitioner believes has resulted in his placement at the BOP facility in which he is incarcerated. DE 239 at 2. Second, Petitioner also argues that he "explicitly instructed [his] attorney not to submit [his] plea at that time, as the District Attorney's office ha[d] just undergone a change," but that his attorney "submitted" Petitioner's plea without Petitioner's "knowledge or intent." DE 239 at 2. Third, Petitioner contends he was deprived of the opportunity to submit a "motion in limine" which would have "allowed [him] the right to confront [his] accuser," thus "preclud[ing] the charges from being used against [him]." DE 239 at 3. Fourth, Petitioner argues that he "was promised a 40% reduction" in his sentence but only received a 30% reduction. DE 239 at 3.

## II. Legal Standards

"A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court 'to vacate, set aside, or correct his sentence' pursuant to 28 U.S.C. § 2255." *Umar v. United States*, 161 F.Supp.3d 366, 373 (E.D. Va. 2015) (quoting § 2255(a)). Such relief is appropriate when:

> the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.

4

28 U.S.C. § 2255(b). The petitioner has the burden "to establish by a preponderance of the evidence" the purported basis for relief. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

The United States may respond to a Section 2255 motion by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *United States v. Reckmeyer*, 900 F.2d 257, 1990 WL 41044, at *4 (4th Cir. Apr. 2, 1990) ("a district court may properly consider a Rule 12(b)(6) challenge to the legal sufficiency of a § 2255 petition"). In such proceedings, "the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss." *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009). However, the scope of a court's review for a motion to dismiss a habeas petition is broader than the typical civil context because the court may also consider the record from the petitioner's underlying conviction and any exhibits attached to the petition. *See id.* at 139; *McCollough v. Bragg*, No. 5:20-CV-138, 2021 WL 236079, at *3 (D.S.C. Jan. 25, 2021); 28 U.S.C. § 2255(b) (instructing court to review "the files and records of the case").

## III. Discussion

Broadly, Petitioner's motion does not identify such "a denial or infringement of [his] constitutional rights . . . as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Petitioner knowingly and voluntarily pled guilty to the charges against him following a full and frank discussion with the court about the rights his decision would waive, and his subsequent incarceration does not violate the Constitution. And none of Petitioner's four specific complaints change that calculation.

Regarding Petitioner's concerns over his status points driving his placement, once BOP assumes custody of a prisoner, the court has no authority to designate the place of imprisonment. Following sentencing, Petitioner was "committed to the custody of the Bureau of Prisons until the

5

expiration of the term imposed." 18 U.S.C. § 3621(a). The BOP is then charged with designating "the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). Federal courts have long held that Section 3621(b) gives the executive branch, not the courts, primary authority with regard to a prisoner's place of confinement. *See, e.g., United States v. Jalili,* 925 F.2d 889, 892 (6th Cir.1991); *United States v. Dragna,* 746 F.2d 457, 458 (9th Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985); *United States v. Leland,* 840 F.Supp.2d 401, 403 (D.Maine 2012). As for Petitioner's plea, regardless of what Petitioner instructed his attorney to communicate to the prosecutor, Petitioner himself pled guilty before the court; and the court confirmed at Petitioner's arraignment that he was ready to enter a plea and was not entering it pursuant to anyone else's unrecorded promise. Regarding any motion in limine and Petitioner's rights under the Confrontation Clause, the court informed Petitioner at his arraignment that a guilty plea would specifically waive Petitioner's rights to confront the witnesses against him. Petitioner still chose to plead guilty. Finally, any agreement between Petitioner and the Government would solely have focused on the Government's recommendation at sentencing. As Petitioner knew, the court, alone, would determine his sentence, and discrepancy between the government's actual recommendation and Petitioner's expectation of that recommendation does not render his sentence unlawful.

Accordingly, the United States' Motion is GRANTED, and Petitioner's Motion is DISMISSED.

SO ORDERED this ___30th___ day of April, 2026.

Richard E Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

6